**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4332
_____

ALEJANDRO RAFAEL GARCIA-GARCIA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A041-104-430)
Immigration Judge:  Honorable Jesus Clemente

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 13, 2011
Before:  BARRY, HARDIMAN and COWEN, Circuit Judges

(Opinion filed: July 13, 2011)
_____

OPINION
_____

PER CURIAM

Alejandro Rafael Garcia-Garcia, a citizen of Mexico, was admitted to the United

States as a lawful permanent resident in 1986.  In 2006, he was convicted of conspiracy

to distribute marijuana in the United States District Court for the Southern District of

California.  See 21 U.S.C. §§ 841(a)(1) and 846.  Garcia-Garcia was sentenced to 72

months in prison.

The Government charged Garcia-Garcia with removability for having been convicted of an aggravated felony as defined in Immigration and Nationality Act ("INA") § 101(a)(43)(B) [8 U.S.C. § 1101(a)(43)(B)] (illicit trafficking in controlled substance), see INA § 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)], and for having been convicted of a controlled substance offense, see INA § 237(a)(2)(B)(i) [8 U.S.C. § 1227(a)(2)(A)(iii)]. Garcia-Garcia conceded that he was removable and applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). In support of his claims, Garcia-Garcia alleged that he will be harmed by drug dealers or corrupt policemen who believe that he owes them money.

Garcia-Garcia testified that he was arrested in 2000 and that the police confiscated $100,000 worth of drugs that he was smuggling on behalf of a cartel. The cartel blamed Garcia-Garcia for the confiscated shipment and demanded that he repay the lost money. Because of threats from the drug cartel, Garcia-Garcia jumped bail and went to live in Calexico, California. In 2005, a friend called Garcia-Garcia and urged him to travel to Tijuana, Mexico. Once there, a group of uniformed masked men with badges and guns forced Garcia-Garcia into a van. A police car gave chase, but backed off after one of the men in the van "got on the radio and gave some kind of code." Garcia-Garcia was held captive for three days, during which he was questioned about whether he owed anyone money, beaten, and choked until he lost consciousness. The kidnapers negotiated with

2

Garcia-Garcia's cousin, who was a law enforcement officer in Tijuana.[1]  It was agreed

that Garcia-Garcia would be let go on the condition that he repay $50,000 within two

weeks.  Following his release, Garcia-Garcia sought treatment at a hospital in Mexico for

broken ribs and bruises.  He did not repay the money.

The Immigration Judge ("IJ") concluded that Garcia-Garcia's conviction rendered

him ineligible for any relief other than deferral of removal under the CAT.[2]  See INA

§§ 208(b)(2)(B)(i) [8 U.S.C. § 1158(b)(2)(B)(i)] (regarding eligibility for asylum);

241(b)(3)(B) [8 U.S.C. § 1231(b)(3)(B)] (regarding eligibility for statutory withholding

of removal); 8 C.F.R. §§ 1208.16(c)(4); 1208.16(d)(2) (regarding eligibility for

withholding of removal under the CAT).  As to that basis for relief, the IJ found that

Garcia-Garcia lacked credibility because his testimony was not plausible and held that he

failed to sustain his burden of demonstrating that he would be subjected to torture.  The

BIA dismissed Garcia-Garcia's appeal.  Although the Board noted that Garcia-Garcia had

provided reasonable explanations for some of the implausibilities identified by the IJ, it

found no clear error in the adverse credibility finding.  Alternatively, the BIA concluded

---

[1] Garcia-Garcia's cousin was shot in 2009.  While Garcia-Garcia believed that there was a "strong possibility" that the shooting was connected to the kidnapping, his cousin stated in a declaration that "I do not know who or why this attempt was made against my life."

[2] Because Garcia-Garcia did not challenge this determination on appeal to the Board of Immigration Appeals ("BIA"), we lack jurisdiction to review it.  See INA § 252(a)(2)(D) [8 U.S.C. § 1252(a)(2)(D)]; Hoxha v. Holder, 559 F.3d 157, 159-61 (3d Cir. 2009).

3

that the IJ properly determined that it is unlikely that Garcia-Garcia will face torture if removed to Mexico. Garcia-Garcia has filed a timely petition for review of the BIA's decision.

As the Government argues, we generally lack jurisdiction to review a final order of removal against a criminal alien, like Garcia-Garcia, who is removable for having committed an offense covered in INA § 237(a)(2). We retain jurisdiction, however, to review "constitutional claims or questions of law" raised in a petition for review. INA § 242(a)(2)(D) [8 U.S.C. § 1252(a)(2)(D)]; Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005). However, "[o]ur jurisdiction in that respect is 'narrowly circumscribed' in that it is limited to 'colorable claims or questions of law.'" Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010) (quoting Cospito v. Att'y Gen., 539 F.3d 166, 170 (3d Cir. 2008) (per curiam)) (quotation marks and citation omitted in original). A claim is not colorable if "it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." Id. (internal quotation marks and citation omitted). We must therefore determine whether Garcia-Garcia's petition raises a colorable legal or constitutional question, as distinguished from factual questions over which we lack jurisdiction. See Alaka v. Att'y Gen., 456 F.3d 88, 102 (3d Cir. 2006). With respect to CAT claims, the question of the likelihood of torture is a mixed one, comprised of a factual component ("what is likely to happen to the petitioner if

4

removed") and a legal one ("does what is likely to happen amount to the legal definition of torture"). Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010).

Garcia-Garcia presents two legal questions, namely, whether the BIA sufficiently reviewed all relevant evidence of torture and whether the BIA erred in concluding that the evidence of possible torture was sufficient to establish eligibility for CAT relief. In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, "all evidence relevant to the possibility of future torture shall be considered . . . ." 8 C.F.R. § 1208.16(c)(3). Garcia-Garcia argues that the IJ "did not even address the possibility" that the officers in the marked police car which chased the kidnappers were accomplices to the crime. But the IJ did consider Garcia-Garcia's allegation that "the marked police car stopped chasing them because [he] heard somebody in the van . . . give some code or some information." Likewise, the BIA noted that Garcia-Garcia "explained that a police car began chasing the vehicle after it ran through a red light, but stopped pursuing the van when one of the perpetrators spoke to the officer over the radio." On this record, we conclude that the IJ and the BIA sufficiently reviewed the evidence concerning Garcia-Garcia's kidnapping, as well as the other relevant evidence of the conditions in Mexico.

In addition, we conclude that the BIA properly determined that the evidence Garcia-Garcia presented about what is likely to happen did not meet the legal definition of torture. "Torture is defined as any act by which severe pain or suffering, whether

5

physical or mental, is intentionally inflicted on a person for such purposes as obtaining . . . information or a confession, punishing . . . for an act, . . . intimidating or coercing, or for any reason based on discrimination of any kind." 8 C.F.R. § 1208.18(a)(1). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of" an official person. 8 C.F.R. § 1208.18(a)(1). We agree that the absence of a link between the Mexican government and Garcia-Garcia's kidnapping precludes the grant of CAT relief. To the extent that Garcia-Garcia challenges the conclusion that the Mexican police did not act in collusion with the criminals who kidnapped him and are not willfully blind to the criminals' activity, we lack jurisdiction.

For the foregoing reasons, we will deny the petition for review.

6